PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

SHERYL L. HALL,
           *Plaintiff-Appellant,*

           and

DONALD R. HALL,
                     *Plaintiff,*

           v.

HILLARY RODHAM CLINTON; MARK
LINDSAY; MARSHA SCOTT; LAURA
TAYMAN; JOHN DOE; JANE DOE,
           *Defendants-Appellees,*

           and

DEMOCRATIC NATIONAL COMMITTEE,
Officers, Agents, Employees;
FRANKLIN REEDER; JODIE TORKELSON;
ADA POSEY; CHARLES BENJAMIN;
CRAIG SMITH; ERIC VADEN; MAGGIE
WILLIAMS; JOSEPH ANDREW,
                     *Defendants.*

No. 99-2665

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Albert V. Bryan, Jr., Senior District Judge.
(CA-99-694-A)

Argued: November 2, 2000

Decided: December 19, 2000

Before WILKINSON, Chief Judge, and WILKINS and
MOTZ, Circuit Judges.

Affirmed by published opinion. Judge Wilkins wrote the opinion, in which Chief Judge Wilkinson and Judge Motz joined.

---

**COUNSEL**

**ARGUED:** Paul Joseph Orfanedes, KLAYMAN & ASSOCIATES, P.C., Washington, D.C., for Appellant. Michael Scott Raab, Appellate Staff, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees. **ON BRIEF:** Larry Klayman, KLAYMAN & ASSOCIATES, P.C., Washington, D.C., for Appellant. David W. Ogden, Acting Assistant Attorney General, Helen F. Fahey, United States Attorney, Mark B. Stern, Appellate Staff, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees.

---

**OPINION**

WILKINS, Circuit Judge:

Sheryl L. Hall appeals a district court order dismissing her claims under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), and 42 U.S.C.A. § 1985(1) (West 1994), as being precluded by the Civil Service Reform Act (CSRA) of 1978, Pub. L. No. 95-454, 92 Stat. 1111 (codified as amended in scattered sections of 5 U.S.C.A.). Because the CSRA constitutes the exclusive remedy for claims arising out of federal employment, we affirm.

I.

Hall alleged the following facts in her amended complaint. On October 25, 1992, Hall began employment as a manager in the Executive Office of the President ("EOP"). In the time she worked for the EOP, she received numerous awards and high performance ratings. In November 1993, Hall was responsible for developing software for what became known as the "White House Office Database" ("WhoDB"). Development of the WhoDB was overseen by Director of White House Correspondence Marsha Scott and by First Lady Hil-

lary Rodham Clinton. Scott was assisted by two employees of the White House Correspondence Office, Eric Vaden and Laura Tayman. In November 1993, Hall and Scott met regarding the WhoDB. When Scott described the political nature of some of the information that Clinton intended to include in the WhoDB, Hall expressed concern regarding the legality of doing so. In response, Scott instructed Hall to do her best to circumvent the applicable legal restrictions. In a subsequent meeting, also in November 1993, Hall informed Scott that she had concluded that using the WhoDB as described by Scott would indeed be illegal. Scott responded angrily by "oust[ing]" Hall from Scott's office. J.A. 27.

In January 1994, Scott transmitted a memorandum to Clinton and Bruce Lindsey, an advisor to the President who was employed in the White House Counsel's Office. In the memo, she stated that Clinton and the President wanted the WhoDB completed, and she falsely characterized Hall as "old, less informed, unenthusiastic, disloyal to the President's administration, and an obstacle to the development of the WhoDB." *Id.* at 27-28 (amended complaint) (internal quotation marks omitted).

Beginning in January 1994, ten employees were removed from Hall's supervision and she was relieved of her responsibility concerning the WhoDB. Tayman and Vaden transmitted a memorandum to Scott in March 1994 falsely characterizing Hall as "disloyal, incompetent, and lacking in management skills." *Id.* at 28. Hall received no prior notification regarding this memo and no reasonable opportunity to defend herself against the allegations therein. Scott, in turn, transmitted the memo to White House Deputy Chief of Staff Phil Lader and to Clinton. Neither Clinton, Scott, Tayman, nor Vaden supervised Hall or had any authority over her. Hall's responsibilities continued to be reduced in subsequent months, and in November 1996, her position was eliminated and her responsibilities were assigned to a less qualified employee for whom she was assigned to work.

Hall subsequently initiated this suit, alleging two causes of action that are relevant here: (1) that by transmitting the false memoranda disparaging her, Scott, Tayman, and Vaden, acting under color of law, violated Hall's liberty interest in her reputation without affording her the due process of law required by the Fifth Amendment to the United

States Constitution; and (2) that Scott, Clinton, and other unnamed officials violated 42 U.S.C.A. § 1985(1) by agreeing to impede Hall by intimidation or threat from lawfully discharging her duties or to injure Hall in her person or property because of the lawful discharge of her duties.

The defendants moved to dismiss Hall's complaint for lack of subject matter jurisdiction and for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(1), (6). The district court granted the motion, determining that it lacked subject matter jurisdiction over the claims because they were precluded by the CSRA. The court alternatively determined that the complaint failed to state a Fifth Amendment *Bivens* claim because Hall did not have a vested liberty interest in her employment with the EOP and failed to state a 42 U.S.C.A. § 1985(1) claim because it did not allege class-based discrimination.

## II.

Hall maintains that the district court erred in dismissing her Fifth Amendment *Bivens* claim against Scott, Tayman, and Vaden as being precluded by the CSRA. We disagree.

A *Bivens* action is a judicially created damages remedy designed to vindicate violations of constitutional rights by federal actors. *See Bivens*, 403 U.S. at 395-97. In order for a *Bivens* remedy to be available, a court must determine that (1) Congress has not already provided an exclusive statutory remedy; (2) there are no "special factors counselling hesitation in the absence of affirmative action by Congress"; and (3) there is no "explicit congressional declaration" that money damages not be awarded. *Id.* at 396-97; *see Schweiker v. Chilicky*, 487 U.S. 412, 423 (1988). The "special factors" concept "include[s] an appropriate judicial deference to indications that congressional inaction has not been inadvertent." *Schweiker*, 487 U.S. at 423.

The CSRA "comprehensively overhauled the civil service system," creating a "framework for evaluating adverse personnel actions against [federal employees]." *Lindahl v. Office of Pers. Mgmt.*, 470 U.S. 768, 773-74 (1985). "It prescribes in great detail the protections and remedies applicable to such action, including the availability of

administrative and judicial review." *United States v. Fausto*, 484 U.S. 439, 443 (1988). A primary purpose of enacting the CSRA was "to replace the haphazard arrangements for administrative and judicial review of personnel action" that existed prior to the CSRA. *Id.* at 444. When the CSRA was enacted, the perception was that the existing appeals process was so lengthy and complicated that federal supervisors were discouraged from taking legitimate adverse personnel actions. *See id.* at 445. Further, because multiple jurisdictions had concurrent jurisdiction over actions challenging personnel decisions, there was a wide variation in decisions regarding the same or similar matters. *See id.* Accordingly, the CSRA was designed to eliminate this problem as well. *See id.*

The Supreme Court examined the availability of a *Bivens* action in a federal employment context in *Bush v. Lucas*, 462 U.S. 367 (1983). In *Bush*, the Supreme Court determined that federal employment constituted a "special factor" warranting refusal to recognize a First Amendment *Bivens* claim asserted by a federal employee. *See Bush*, 462 U.S. at 378-80; *Zimbelman v. Savage*, 228 F.3d 367, 370 (4th Cir. 2000). This court recently decided a similar case, the facts of which are closely analogous to the case at bar. In *Zimbelman*, two employees were fired from their jobs with the Air Force under suspicion of having committed various acts of misconduct, including theft and fraud. *See Zimbelman*, 228 F.3d at 369. The employees brought suit against their supervisors and the Air Force investigators who had conducted the investigation into their misconduct, asserting several constitutional claims, including one under *Bivens* for a violation of their Fifth Amendment right to preserve their reputations. *See id.* at 370. This court affirmed the dismissal of the *Bivens* claims, concluding that they "indisputably ar[o]se from a federal employment relationship." *Id.*

Hall contends that the CSRA does not preclude her *Bivens* action because although the CSRA provides for administrative or judicial review of the action taken against her, her *Bivens* claim is not against her supervisor. Hall's argument is without merit, however. The salient fact here is that the wrongful acts Hall alleges were taken against her arose out of her federal employment relationship. Because they did arise out of her federal employment, *Bush* and *Zimbelman* dictate that Hall's claim is precluded. That the CSRA does not provide the rem-

edy that she would prefer is of no moment. *See Bush*, 462 U.S. at 388-90 (refusing to allow a *Bivens* action even though "existing remedies [did] not provide complete relief"); *Zimbelman*, 228 F.3d at 370-71 (holding that plaintiffs were not released from the exclusive remedial framework of the CSRA when their claims arose from their federal employment even though the CSRA provided plaintiffs with no remedy); *cf. Lombardi v. Small Bus. Admin.*, 889 F.2d 959, 961 (10th Cir. 1989) (holding that plaintiff's claims were precluded by CSRA because actions complained of arose from federal employment relationship even though many of the alleged violations occurred after the employment relationship was terminated); *Gleason v. Malcom*, 718 F.2d 1044, 1048 (11th Cir. 1983) (per curiam) (holding that claims by federal employee were barred under *Bush* even though one claim was against coworkers because "[t]he purpose of denying a private cause of action to federal employees is to ensure that they do not bypass comprehensive and carefully balanced statutory and administrative remedies in order to seek direct judicial relief"). Accordingly, the district court correctly dismissed Hall's *Bivens* claim.[1]

III.

Hall next argues that, even assuming that the special factor of federal employment mandates dismissal of her *Bivens* claim, that factor does not counsel dismissal of her § 1985(1) claim. We disagree.

Hall correctly maintains that *Bush* is not controlling with regard to her § 1985(1) claim because *Bush* "dealt only with the effect of the CSRA on the judicial implication of *constitutional* remedies, not with the foreclosure of statutory claims." *Spagnola v. Mathis*, 809 F.2d 16, 30 (D.C. Cir. 1986), *reh'g en banc granted in part*, 859 F.2d 223 (D.C. Cir. 1988); *see United States v. Lund*, 853 F.2d 242, 248 (4th Cir. 1988) (explaining that "cases holding that the comprehensive nature of the remedies available to federal employees under the CSRA preclude certain judicially-implied remedies for the personnel practices the CSRA prohibits" are "completely inapposite" to question of implicit repeal of express provision of a statute). Nevertheless, we

---

[1]Because we affirm the dismissal of this claim on this ground, we do not address Hall's arguments concerning the alternative basis given by the district court for the dismissal of the claim.

hold that Congress intended that the CSRA would operate to the exclusion of all other statutory remedies for claims arising out of the federal employment relationship. Because "Congress clearly intended the CSRA to be the exclusive remedy for federal employees," the comprehensive grievance procedures of the CSRA implicitly repealed all other then-existing statutory rights of federal employees regarding personnel decisions.[2] *Pinar v. Dole*, 747 F.2d 899, 913 (4th Cir. 1984); *see Petrini v. Howard*, 918 F.2d 1482, 1484-85 (10th Cir. 1990) (per curiam) (explaining that the CSRA preempted state law challenges to federal personnel decisions because the CSRA "was intended to provide the exclusive procedure for challenging" such decisions); *Spagnola*, 809 F.2d at 30 (holding that federal employee was precluded from bringing § 1985(1) claim because "the CSRA is the exclusive remedy for aggrieved federal employees advancing non-constitutional claims").

Hall maintains that her claim should not be precluded because neither Scott nor Clinton were her supervisor and because Clinton was not a federal employee. Even if this is true, however, someone with authority to do so made the personnel decisions of which Hall complains, regardless of whether the decisions were influenced by someone without such authority. Allowing a federal employee to sue those people who may have influenced a supervisor's decision to take a certain personnel action "would create an obstacle to the attainment of Congress's goal of unifying challenges to federal personnel decisions in a single administrative forum." *Broughton v. Courtney*, 861 F.2d

---

[2]In any event, we note that the CSRA appears to provide a remedy for all of the actions on which Hall premised her § 1985(1) claim. *See* 5 U.S.C.A. § 2301(b)(2) (West 1996) (stating that federal employees "should receive fair and equitable treatment in all aspects of personnel management"); 5 U.S.C.A. § 2302(b)(3) (West 1996) (prohibiting "reprisal for the refusal . . . to engage in . . . political activity"); 5 U.S.C.A. § 2302(b)(8)(A)(i) (West 1996) (prohibiting reprisal for the "disclosure of information . . . which the employee . . . reasonably believes evidences" the "violation of any law, rule, or regulation"); 5 U.S.C.A. § 2302(b)(9)(D) (West 1996) (prohibiting reprisal for "refusing to obey an order that would require the individual to violate a law"); *Fausto*, 484 U.S. at 446 (describing 5 U.S.C.A. § 2302 as prohibiting "unlawful discrimination, coercion of political activity, nepotism, and reprisal against so-called whistleblowers").

639, 641 (11th Cir. 1988). Furthermore, knowledge by a supervisor that making a particular personnel decision may give rise to a lawsuit against those who have influence over him would no doubt discourage some supervisors from taking legitimate personnel actions. *Cf. Fausto*, 484 U.S. at 445; *Bush*, 462 U.S. at 389. For all of these reasons, the district court correctly determined that Hall's 1985(1) claim is precluded by the CSRA.[3]

## IV.

In sum, the district court correctly dismissed Hall's Fifth Amendment *Bivens* and 42 U.S.C.A. § 1985(1) claims for lack of subject matter jurisdiction because they are barred by the CSRA.

*AFFIRMED*

---

[3]Because we affirm the dismissal of Hall's § 1985(1) claim on this basis, we do not address her arguments concerning the alternative basis given by the district court for dismissing the claim.