Sylvia D. MEDLEY, Plaintiff,

v.

Kathleen M. HAWK–SAWYER, individually and in her official capacity as Director, United States Department of Justice, Federal Bureau of Prisons, Margaret C. Hambrick, individually and in her official capacity as Regional Director, Mid–Atlantic Region, United States Department of Justice, Federal Bureau of Prisons, Bryan A. Bledsoe, individually and in his official capacity as Warden, FCI–Morgantown, United States Department of Prisons, Steven Todd Figiel, individually and in his official capacity as Financial manager, FCI Morgantown, United States Department of Justice, Federal Bureau of Prisons, Ronald E. Rubottom, individually and in his official capacity as President AFGE Local 2441, FCI–Morgantown, United States Department of Justice, Federal Bureau of Prisons, and Harry Simons, individually and in his official capacity as Supervising Accountant, FCI–Morgantown, United States Department of Justice, Federal Bureau of Prisons, Defendants.

No. Civ.A. 1:00CV117.

United States District Court,
N.D. West Virginia.

Feb. 14, 2001.

884

Larry J. Conrad, Student, Morgantown, WV, for plaintiff, Sylvia Medley.

Melvin W. Kahle, Jr., United States Attorney, Daniel W. Dickinson, Jr., Assistant United States Attorney, Wheeling, WV, Martin R. Cohen, Assistant General Counsel AFGE, Bala Cynwyd, PA, for defendants, Kathleen M. Hawk–Sawyer and Margaret C. Hambrick, and Bryan A. Bledsoe, United States Department of Justice, Federal Bureau of Prisons, Steven Todd Figiel, Ronald E. Rubottom and Harry Simons.

### ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

KEELEY, District Judge.

The question in this case is whether a plaintiff may sue her federal employer for damages pursuant to *Bivens v. Six Unknown Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), and 42 U.S.C. § 1985(3) and § 1986, for alleged wrongful acts that were undertaken in connection with her federal employment. The Court concludes that she may not.

### FACTUAL AND PROCEDURAL BACKGROUND

#### 1. *Employment History of the Plaintiff.*

Sylvia D. Medley ("Medley") was hired by the Federal Bureau of Prisons ["BOP"] on March 30, 1986 at the GS–3 level in Lompoc, California. She worked at FCI–Lompoc for eleven years without incident, reaching a GS–9 level by September 1997. In May 1997, the BOP published an agency-wide notice of an opening for a Budget and Accounting Officer at FCI–Morgantown, in West Virginia. This was a supervisory position at a GS–11 level. Medley applied for and received the position at FCI–Morgantown. Consistent with the BOP's practices and policies, she was required to complete a one year probationary period, as she had never held a supervisory position with the BOP before.

Medley alleges that other BOP employees at FCI–Morgantown conspired to protect their careers, to the detriment of female employees and employees transferring to the facility from elsewhere, and that defendants Simons, Rubottom and Figiel so conspired to ensure that she failed in her new position. Accordingly, on August 16, 1998, she was demoted from the position of Budget and Accounting Officer (GS–11) to Financial Specialist (GS–9).

Medley appealed her demotion to the Merit Systems Protections Board ["MSPB"] on August 25, 1998. During the course of her grievance, she entered into a settlement agreement with the BOP that provided, among other things, that she would be reinstated into the Budget and Accounting position on April 5, 1999; that she would serve another probationary year; that the warden could remove her from her supervisory position, in his discretion, if she behaved unprofessionally or her work was poor; that she be given the opportunity to present her side before the warden took any such action; that she could be removed immediately from her position for misconduct; that the BOP would pay up to $3,000 of her attorney fees; and that "should she be removed from the supervisory position to a position at no lower grade or pay than that from which she was promoted, she waives all appeal rights in the case with Merit Systems Protection Board, Equal Employment Opportunity, or Federal Labor Relations Authority."[1] Medley alleges that

---

**1.** The Settlement Agreement, dated March 29, 1999, is attached to defendants' motion to dismiss and plaintiff's response to motion to dismiss.

she was subsequently demoted a second time on August 23, 1999, to a GS–9 Financial Specialist position.

## 2. *The Complaint*

The complaint sets forth numerous causes of action against the various defendants:

(a) *Conspiracy to interfere with civil rights, in violation of 42 U.S.C. § 1985(3).* Medley alleges that defendants Simons, Rubottom and Figiel conspired to ensure that she failed in her Budget and Accounting position, due to their animus towards African–American women in positions of authority. The alleged conspiracy consisted of the three defendants encouraging hourly employees to fabricate conflicts between themselves, to make false reports and to exaggerate what amounted to a simple personality conflict. Defendant Bledsoe allegedly joined the conspiracy when he took over as Warden of FCI–Morgantown in January 1998, because he accepted the statements of the grieving hourly employees without conducting an independent investigation. She asserts that none of these four defendants are entitled to qualified immunity and that they acted wantonly, willfully and maliciously.

(b) *Neglect to prevent conspiracy, pursuant to 42 U.S.C. § 1986.* The second count of the complaint alleges that defendants Hawk–Sawyer and Hambrick had actual and constructive notice of the discrimination and the conspiracy to discriminate at FCI–Morgantown but were willfully blind to the situation and failed to take steps to prevent the alleged continued discrimination against plaintiff, following her reinstatement.

(c) *Bad faith.* In her third count, Medley claims that Warden Bledsoe breached the implied requirement of good faith in the parties' settlement agreement by de-

moting her for a second time and that such conduct was wanton, willful and malicious.

(d) *Retaliation for filing a MSPB complaint.* In her final count, plaintiff alleges that her demotion in August 1999 was made by Warden Bledsoe in retaliation for the filing of her initial complaint with MSPB.

## 3. *Motion to Dismiss*

The defendants have moved to dismiss the complaint on the grounds of lack of subject matter jurisdiction and for failure to state a claim. Fed.R.Civ.P. 12(b)(1) and (6). They argue that this Court lacks subject matter jurisdiction to hear a *Bivens* action, as pled by the plaintiff, against the defendants in their official capacities and that her claims are precluded by the Civil Service Reform Act. In her response, Medley simply states that, given the waiver of her appeal rights, as set forth in the Settlement Agreement, the refusal of the Court to hear her case would leave her without a forum in which to litigate her grievance against her federal employer. The defendants have not filed a reply brief. The time for filing a reply brief has now elapsed and this motion is ripe for the Court's consideration.

After plaintiff filed her response, defendant Rubottom, both in his individual capacity and also in his capacity as President of AFGE Local 2441 at FCI–Morgantown, filed a motion to dismiss the claims set forth against him.[2] Rubottom states that he was a non-supervisory employee at FCI–Morgantown, with no supervisory authority over the plaintiff, and that this Court lacks jurisdiction to hear plaintiff's 42 U.S.C. § 1985(3) claim against him in light of Title VII of the Civil Rights Act and the Civil Service Reform Act. To the extent Medley asserts claims against Rubottom in his capacity as Union President, he notes that such claims properly should have been brought before the Federal Labor Relations Authority. Medley has not

---

**2.** Defendant Rubottom is defended, in his official capacity as an employee at FCI–Morgantown, by the United States Attorney. In his other capacities, he is represented by local and national counsel, on behalf of the AFGE.

responded to Rubottom's motion. The time for filing a response has now passed and this motion is also ripe for the Court's consideration.

### STANDARD OF REVIEW

Although they have styled their motions as motions to dismiss, the defendants have attached a copy of the Department of Justice's regulations requiring that new supervisors complete a one year probationary period and a copy of the March 29, 1999 Settlement Agreement between the plaintiff and the BOP. A copy of the same Settlement Agreement is attached to the plaintiff's response to the motion. The Court has reviewed these additional materials, particularly the Settlement Agreement. Therefore, in accordance with Rule 12(b) of the Federal Rules of Civil Procedure, which provides that if matters outside the pleading are presented to and considered by the Court on a motion to dismiss, these motions shall be treated as motions for summary judgment, pursuant to Rule 56. *See generally, Laughlin v. Metropolitan Washington Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir.1998).

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to material fact and the moving party is entitled to summary judgment as a matter of law." Fed.R.Civ.P. 56(c). The party seeking summary judgment bears the initial burden of showing the absence of any issues of material fact. *Celotex v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

However, Rule 56 mandates that summary judgment be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. Furthermore,

as the United States Supreme Court noted in *Anderson v. Liberty Lobby, Inc.*, Rule 56 provides that "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

There is no issue of fact in this case as both parties agree that the plaintiff filed a complaint with the MSPB, which was resolved through the Settlement Agreement, and that several months after her reinstatement, she was demoted once again. The Court has before it the legal issue of whether the Civil Service Reform Act is the exclusive remedy for the plaintiff's claims arising out of her federal employment.

### DISCUSSION

#### 1. Sovereign Immunity

Medley has sued federal officials, in both their official and individual capacities, for their alleged violations of her constitutional rights, seeking money damages. She alleges that she was demoted a second time in violation of her constitutional right "to free interstate travel for the purpose of advancing her career" because defendants had an "invidiously discriminatory animus towards African–Americans, and specifically toward African–American women in positions of authority." *See* Complaint. Medley bases her claims upon 42 U.S.C. § 1985(3) and 42 U.S.C. § 1986.

The Court construes these claims as seeking to allege a cause of action under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). In *Bivens*, the United States Supreme Court held that a plaintiff could sue federal officers individually for damages caused by constitutional torts under color of their authority. *See Randall v. United States*, 95 F.3d 339, 344 (4th Cir.1996).

■ The United States Supreme Court has recognized that "[i]t is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell,* 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983). "Furthermore, a waiver of the traditional sovereign immunity cannot be implied but must be unequivocally expressed." *Randall,* 95 F.3d at 345 (quoting *United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976)). A suit against government agents acting in their official capacities is considered a suit against the United States itself. *See Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) ("Official-capacity suits ... generally present only another way of pleading an action against an entity of which an officer is an agent."). While *Bivens* did not abolish the doctrine of sovereign immunity of the United States, "[a]ny remedy under *Bivens* is against federal officials individually, not the federal government." *Randall,* 95 F.3d at 345. *See also Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 510 (2nd Cir.1994).

Accordingly, Medley has failed to state a claim against the defendants in their official capacities. The Court now examines whether she has stated a claim against the federal defendants in their individual capacities.

### 2. *Civil Service Reform Act*

■ Subsequent to submission of the parties' briefings on the motions to dismiss, the Fourth Circuit Court of Appeals held that the Civil Service Reform Act is the exclusive remedy for a plaintiff's *Bivens* and statutory claims that arise from the federal employment relationship itself. *See Hall v. Clinton,* 235 F.3d 202 (4th Cir.2000). Hall was employed as a manager in the Executive Office of the President. Following a dispute over the use of a White House database, ten employees were removed from her supervision and she was relieved of her responsibilities

with the database. Her responsibilities were further eroded over the next eighteen months until her position was eliminated and she was assigned to work for a less qualified employee. Hall filed suit in the United States District Court for the Eastern District of Virginia, alleging her liberty interest in her reputation had been violated, without affording her due process of law as required by the Fifth Amendment of the United States Constitution, and that the defendants had intimidated and threatened her from lawfully discharging her duties, pursuant to 42 U.S.C. § 1985(1).

The district court had decided that Hall's claims under *Bivens* and 42 U.S.C. § 1985(1) were precluded by the Civil Service Reform Act ["CSRA"] of 1978, which is codified in scattered sections of Title 5 of the United States Code. The Fourth Circuit affirmed this decision "[b]ecause the CSRA constitutes the exclusive remedy for claims arising out of federal employment." *Hall,* 235 F.3d at 203. *Hall* provides a thorough analysis of the leading decisions of the Supreme Court and Fourth Circuit Court of Appeals on this issue, concluding that:

> The salient fact here is that the wrongful acts [plaintiff] alleges were taken against her arose out of her federal employment relationship. Because they did arise out of her federal employment, *Bush* and *Zimbelman* dictate that [plaintiff's] claim is precluded. That the CSRA does not provide the remedy that she would prefer is of no moment.

*Hall,* 235 F.3d at 205, *citing, Bush v. Lucas,* 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983), and *Zimbelman v. Savage,* 228 F.3d 367 (4th Cir.2000).

The Supreme Court has repeatedly warned against extending *Bivens,* which involved an egregious breach of the Fourth Amendment by federal agents, into new areas. *Robbins v. Bentsen,* 41 F.3d 1195, 1200 (7th Cir.1994) (quoting *F.D.I.C. v. Meyer,* 510 U.S. 471, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994)) Accordingly, the Court

has held that it would be inappropriate to create a new non-statutory damages remedy for federal employees whose constitutional rights are violated by their employers, because such claims arise out of an employment relationship that is governed by comprehensive procedural and substantive provisions, which give meaningful remedies against the United States. *Bush v. Lucas,* 462 U.S. 367, 368, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983).

■ In particular, the Supreme Court has found that "special factors" exist which "counsel hesitation"[3] in creating such a non-statutory remedy for federal employees because "[f]ederal civil servants are now protected by an elaborate, comprehensive scheme that encompasses substantive provisions forbidding arbitrary action by supervisors and procedures—administrative and judicial—by which improper action may be redressed." *Bush,* 462 U.S. at 385–86, 103 S.Ct. 2404. In *Bush,* the Court also noted that the question is not what remedy the court should provide for a wrong that would otherwise go unredressed, but whether the elaborate, remedial system already in place should be augmented by the creation of a new judicial remedy for alleged constitutional violations. *Id.* at 388, 103 S.Ct. 2404. It refused to create such a remedy for federal employees, concluding that Congress is in a far better position than the judiciary to decide whether it would be in the public interest to create such a remedy. *Id.* at 389–90, 103 S.Ct. 2404.

Similarly in *Zimbelman,* the Fourth Circuit refused to allow two federal employees to pursue their employment—related *Bivens* claims outside of the exclusive remedial framework of the CSRA, even though neither employee was covered by the CSRA's remedial scheme. The Fourth Circuit noted that "[i]t is not relevant that

plaintiffs believe the procedures governing their employment relationship were insufficient. The Supreme Court has twice refused to allow a *Bivens* action in cases where it agreed that the remedies made available by Congress were not complete and that some hardships would go uncompensated." *Zimbelman,* 228 F.3d at 371, (referring to *Bush* and *Schweiker v. Chilicky,* 487 U.S. 412, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988)).

■ Accordingly, where, as here, a plaintiff's claims indisputably arise from a federal employment relationship, a *Bivens* remedy is inappropriate where the "special factor" of federal employment exists. *Zimbelman,* 228 F.3d at 370. However, the Fourth Circuit went even further in *Hall* and extended *Bush,* which had dealt only with the effect of the CSRA on non-statutory claims, to preempt a federal employee's statutory claims as well:

> [W]e hold that Congress intended that the CSRA would operate to the exclusion of all other statutory remedies for claims arising out of the federal employment relationship. Because Congress clearly intended the CSRA to be the exclusive remedy for federal employees, the comprehensive grievance procedures of the CSRA implicitly repealed all other then-existing statutory rights of federal employees regarding personnel decisions.

*Hall,* 235 F.3d at 206 (quoting *Pinar,* 747 F.2d at 913). *See also Fausto,* 484 U.S. at 446, 108 S.Ct. 668 (noting that the CSRA prohibits unlawful personnel practices, including unlawful discrimination).

■ The Supreme Court has recognized that the CSRA comprehensively overhauled the civil service system and created an elaborate new framework for evaluating

---

**3.** *Bivens* actions are inappropriate if there are "special factors counseling hesitation." *Bivens,* 403 U.S. at 396, 91 S.Ct. 1999. *See generally Zimbelman,* 228 F.3d at 370. The concept of "special factors" includes an appropriate judicial deference to indications

that congressional inaction has not been inadvertent, such as the existence of an adequate remedial mechanism. *Schweiker v. Chilicky,* 487 U.S. 412, 423, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988).

adverse personnel actions against federal employees. *Lindahl v. OPM*, 470 U.S. 768, 105 S.Ct. 1620, 84 L.Ed.2d 674 (1985). "A leading purpose of the CSRA was to replace the haphazard arrangements for administrative and judicial review of personnel action, part of the outdated patchwork of statutes and rules built up over almost a century that was the civil service system." *United States v. Fausto*, 484 U.S. 439, 444, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988). Accordingly, Congress enacted the CSRA, an integrated scheme of administrative and judicial review, which was designed to balance the interests of federal employees with the need for sound and efficient administration. *Id.* at 445, 108 S.Ct. 668. *See generally, Collins v. Bender*, 195 F.3d 1076, 1077–78 (9th Cir. 1999) (noting that judicial deference is particularly appropriate in the realm of federal personnel policy because Congress is far more competent that the Judiciary to provide a proper remedy for unconstitutional federal personnel actions). Thus, Congress has provided an elaborate remedial scheme for the protection of a person's constitutional rights in the employment context. *Robbins*, 41 F.3d at 1202 (dismissing IRS employee's Title VII action for employment discrimination).

■ As in *Hall*, Medley's statutory claims are also preempted because the CSRA provides the exclusive remedy for aggrieved federal employees pursuing claims that arise out of their federal employment. Her claims indisputably arise out of her federal employment as she is contesting her second demotion by the BOP. The lack of an alternative forum in which she can litigate her grievance over her demotion, under the terms of the Settlement Agreement, is immaterial as CSRA preclusion applies even in the absence of a CSRA remedy. *See generally Bush, Schweiker, Zimbelman*, as discussed *supra*, and *Lee v. Hughes*, 145 F.3d 1272 (11th Cir.1998).

Because Medley has failed to state a claim upon which relief can be granted, the Court need not address the alternative arguments raised by defendants in their motions to dismiss.

## CONCLUSION

In light of the comprehensive remedies available to the plaintiff under the CSRA, defendants' motions to dismiss [Docket Nos. 9 and 15] are **GRANTED** and this matter is hereby **DISMISSED WITH PREJUDICE** from the docket of the Court.

It is so **ORDERED**.