**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 21-2359

ISRAEL RYDIE; ELIZABETH FLEMING,

Plaintiffs − Appellants,

v.

JOSEPH R. BIDEN, in his official capacity as President of the United States; XAVIER BECERRA, in his official capacity as Secretary of Health and Human Services; LLOYD J. AUSTIN, III, in his official capacity as Secretary of Defense,

Defendants – Appellees.

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Deborah K. Chasanow, Senior District Judge.  (8:21−cv−02696−DKC)

Submitted:  February 22, 2022                    Decided:  April 19, 2022

Before WILKINSON, DIAZ, and RICHARDSON, Circuit Judges.

Vacated and remanded with instructions by unpublished opinion.  Judge Diaz wrote the opinion, in which Judge Wilkinson and Judge Richardson joined.

**ON BRIEF:**  Jonathan Bolls, Alexandria, Virginia, for Appellants.  Brian M. Boynton, Acting Assistant Attorney General, Marleigh D. Dover, Charles W. Scarborough, Lowell V. Sturgill Jr., Sarah Carroll, Casen B. Ross, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees.

Unpublished opinions are not binding precedent in this circuit.

DIAZ, Circuit Judge:

Israel Rydie and Elizabeth Fleming sued their federal-agency employers and President Biden, challenging the President's executive order mandating that all federal employees receive COVID-19 vaccinations on pain of termination. To prevent being fired while the lawsuit progressed, they sought to enjoin the order. The district court ruled against them, finding (1) their constitutional claims lacked merit, (2) a final judgment in their favor could redress any harms they might suffer, and (3) the public interest disfavored injunctive relief.[1]

But the district court lacked jurisdiction.[2] Congress stripped the courts of jurisdiction to hear certain actions involving federal employment through an intricate statutory scheme—the Civil Service Reform Act ("CSRA"). Because Rydie and Fleming's challenges fall comfortably within that scheme, we vacate the district court's judgment and remand with directions to dismiss this case.

I.

A.

In September 2021, President Biden issued Executive Order 14,043, requiring COVID-19 vaccinations for all federal employees. Exec. Order No. 14,043, 86 Fed. Reg.

---

[1] At the request of the parties, we decided this case without oral argument.

[2] The Fifth Circuit recently came to the same conclusion in separate litigation challenging the vaccine mandate. *Feds for Med. Freedom v. Biden*, No. 22-40043, 2022 WL 1043909, at *6 (5th Cir. 2022).

50,989, 50,989 (Sept. 9, 2021).  The Order called for each agency to implement a program to enforce the vaccine mandate, and it permitted agencies to create "exceptions only as required by law." *Id.* at 50,990.

Although the Order authorized agencies to implement individual vaccination programs, the Safer Federal Workforce Task Force—which President Biden created to "provide ongoing guidance to heads of agencies on . . . the continuity of Government functions during the COVID-19 pandemic"—provided specific direction.     Exec. Order No. 13,991, 86 Fed. Reg. 7,045, 7,046 (Jan. 20, 2021).  The Task Force clarified that workers should receive their last vaccine dose on or before November 8, 2021.

The Task Force advised agencies that they could proceed against noncompliant employees starting November 9.  It said that "the enforcement process" should begin with "a brief period of education and counseling (5 days)," with the goal to have employees "demonstrate progress toward becoming fully vaccinated." J.A. 107.  If an employee failed to show progress, the guidance instructed agencies to suspend that employee for fourteen days or fewer.  And if noncompliance persisted, the agency could terminate the employee. Agencies were expected to "hold the discipline in abeyance" if, at any phase, the employee proved that he or she received at least one vaccine dose.  J.A. 108.

B.

Israel Rydie is a Department of Defense employee at the Defense Information Systems Agency.  Elizabeth Fleming is a Food and Drug Administration employee within the Department of Health and Human Services.  Both Departments have adopted the Task Force's policies.

3

Rydie and Fleming haven't said whether they are vaccinated, and they don't intend to file for an exemption. They chose instead to sue the President, the Secretary of Health and Human Services, and the Secretary of Defense (all in their official capacities) in the District of Maryland. Asking the court to declare the vaccination mandate unconstitutional, Rydie and Fleming claimed the President's order violated (1) the Fifth, Ninth, and Tenth Amendments; and (2) separation of powers principles.

Rydie and Fleming moved for a nationwide, preliminary injunction, which the district court denied. *Rydie v. Biden*, No. 21-2696, 2021 WL 5416545, at *1 (D. Md. Nov. 19, 2021). The court began its analysis by discussing its authority to issue an injunction. It recognized that "[f]ederal courts are generally without power to enjoin the President." *Id.* at *3. So it took an injunction against President Biden off the table.[3]

The court then turned to its subject-matter jurisdiction, finding that this case presented a federal question under 28 U.S.C. § 1331. But it also considered whether Congress impliedly divested it of jurisdiction via the CSRA.

The district court discussed two sections of the CSRA. First, the court addressed 5 U.S.C. § 7513's procedure for challenging "certain serious adverse employment actions."

---

[3] Rydie and Fleming don't challenge this part of the district court's ruling. Indeed, an injunction against the President is an "extraordinary" remedy. *Franklin v. Massachusetts*, 505 U.S. 788, 802 (1992) (plurality opinion). Courts generally lack authority to enjoin the President from performing discretionary functions. *Id.* at 802–03. Rydie and Fleming cite no exception. In any event, "injunctive relief against [subordinate] officials [w]ould substantially redress" Rydie and Fleming's alleged injury. *Swan v. Clinton*, 100 F.3d 973, 979 (D.C. Cir. 1996).

*Id.* at \*2. It acknowledged that the CSRA is the exclusive means to review covered actions, and § 7513 covers employee termination. Because Rydie and Fleming preemptively challenged their terminations, the court reasoned that they would "likely have to proceed through [§ 7513's] process." *Id.*

Second, the district court considered 5 U.S.C. § 1214's process for challenging "less severe actions." *Id.* It said that § 1214 requires filing a complaint with an independent agency—the Office of Special Counsel—which can hear claims asserting constitutional violations. Because Rydie and Fleming hadn't shown that they exhausted either process, the court declared their jurisdictional showing was "questionable at best." *Id.* at \*3.

Even so, the district court analyzed the preliminary injunction on the merits, finding Rydie and Fleming's constitutional arguments unlikely to succeed. It also said that they wouldn't suffer irreparable harm absent an injunction because their alleged harms could be "fully redressed through reinstatement, backpay, and expungement of any mark of misconduct." *Id.* at \*5. And it concluded that the balance of the equities and the public interest disfavored a preliminary injunction because the government had a compelling interest in stemming COVID-19's spread.

As a result, the district court denied relief. This appeal followed.[4]

---

[4] Subsequently, a district court in the Southern District of Texas enjoined the United States from enforcing Executive Order 14,043. *Feds for Med. Freedom v. Biden*, No. 21-cv-356, 2022 WL 188329, at \*8 (S.D. Tex. Jan. 21, 2022). The Fifth Circuit has since vacated the district court's judgment for lack of subject matter jurisdiction. *Feds for Med. Freedom*, 2022 WL 1043909, at \*6 . In the interim, the Safer Federal Workforce Task Force published updated guidance, instructing agencies not to enforce the vaccine order because of the pending challenges. *Frequently Asked Questions Related to Compliance*

II.

We begin (and end) with subject-matter jurisdiction, a threshold requirement for Article III courts. *See Ashcroft v. Iqbal*, 556 U.S. 662, 671 (2009). The district court couldn't reach the merits of the motion for preliminary injunction without first resolving its jurisdiction. *See Di Biase v. SPX Corp.*, 872 F.3d 224, 232 (4th Cir. 2017) ("We find, however, that this Court cannot, as the district court has done, assume subject matter jurisdiction merely to reach a less thorny issue."). But after professing doubt about its jurisdiction, the district court still proceeded to the merits.

We are left to infer that the court found jurisdiction was proper. And we review that determination de novo. *Barlow v. Colgate Palmolive Co.*, 772 F.3d 1001, 1007 (4th Cir. 2014) (en banc). Because we conclude that Congress intended for the CSRA to cover Rydie and Fleming's claims, we hold that the district court lacked jurisdiction.

A.

Congress designed the Civil Service Reform Act "to replace the haphazard arrangements for administrative and judicial review of personnel action[s]." *United States v. Fausto*, 484 U.S. 439, 444 (1988). The Act "creat[ed] an elaborate new framework for evaluating adverse personnel actions against federal employees." *Id.* at 443 (cleaned up).

---

*with the Applicable Preliminary Nationwide Injunction on Implementation and Enforcement of the Vaccination Requirement Pursuant to Executive Order (E.O.) 14043*, Safer Federal Workforce Task Force, 1 (Jan. 24, 2022), https://www.saferfederalworkforce.gov/downloads/FAQs_compliance_injunction_EO%2014043_20220124.pdf.

That framework describes "in great detail the protections and remedies applicable to such action[s], including the availability of administrative and judicial review." *Id.*

"Three main sections of the CSRA govern personnel action[s]." *Id.* at 445. Two of them are relevant here.[5] First, Chapter 23 lays out "merit system principles" by which agencies must abide. 5 U.S.C. § 2301(b). That chapter classifies certain violations of those principles as "prohibited personnel practice[s]." *Id.* § 2302(a). Employees who have suffered a "prohibited personnel practice" can file an allegation with the Office of Special Counsel. *Id.* § 1214(a). If the Special Counsel finds "reasonable grounds" suggesting a "prohibited personnel practice" occurred, he or she must report it to the Merit Systems Protection Board, the employing agency, and the Office of Personnel Management. *Id.* § 1214(b)(2)(B). If the agency doesn't fix the problem, "the Special Counsel may petition the Board," and the Board can order corrective action. *Id.* § 1214(b)(2)(C), (b)(4)(A). Corrective action may include attorneys' fees, back pay, and other compensatory damages. *Id.* § 1214(g). Judicial review of the Board's final orders is available in the United States Court of Appeals for the Federal Circuit. *Id.* §§ 1214(c), 7703(b)(1)(A).

Second, Chapter 75 governs more serious agency actions against executive-branch employees. *See id.* § 7501 *et seq.* The first subchapter discusses the procedure for imposing suspensions of fourteen days or less. *Id.* §§ 7501–7504. The second does the same for more severe actions. *Id.* §§ 7511–7515. It defines those actions as "removal,"

---

[5] The third section describes agency actions taken against an employee for unacceptable performance. *See* 5 U.S.C. § 4301 *et seq.*

7

"suspension for more than 14 days," "reduction in grade," "reduction in pay," and "furlough of 30 days or less." *Id.* § 7512(1)–(5). Both subchapters afford employees procedural rights, including notice, representation by counsel, the opportunity to respond, and a reasoned decision from the agency. *Id.* §§ 7503(b), 7513(b). Appeals of serious agency actions under the second subchapter lie with the Merit Systems Protection Board. *Id.* §§ 7503(c), 7513(d). And employees can appeal from the Board to the Federal Circuit. *Id.* § 7703(b)(1)(A).

Under both Chapters, prevailing employees are generally entitled to reinstatement, back pay, and attorneys' fees. *See id.* §§ 1204(m), 5596(b).

B.

With this background in mind, we turn to the question of jurisdiction. Generally, "district courts [] have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. But Congress may divest district courts of their jurisdiction. *Bennett v. SEC*, 844 F.3d 174, 178 (4th Cir. 2016). "[D]etermining whether Congress has impliedly divested district-court jurisdiction over agency action involves a two-step inquiry." *Id.* at 181. "First, we ask whether Congress's intent to preclude district-court jurisdiction is 'fairly discernible in the statutory scheme.'" *Id.* (quoting *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207 (1994)). "Second, we ask whether plaintiffs' 'claims are of the type Congress intended to be reviewed within this statutory structure.'" *Id.* (quoting *Thunder Basin*, 510 U.S. at 212).

We address each step in turn.

8

1.

The Supreme Court has spoken on step one. In *Elgin v. Department of Treasury*, the Court considered whether federal employees who were discharged for violating the Military Selective Service Act could challenge the statute in district court before exhausting the Civil Service Reform Act's remedies. 567 U.S. 1, 6–8 (2012). The Court said that the CSRA set up an "elaborate framework" for adjudicating certain actions against federal employees. *Id.* at 11 (cleaned up). And the "painstaking detail" Congress put into the CSRA evidenced its intent to foreclose judicial review. *Id.* So the Court held that "the CSRA provides the exclusive avenue to judicial review when a qualifying employee challenges an adverse employment action by arguing that a federal statute is unconstitutional."[6] *Id.* at 5.

Thus, *Elgin* resolves step one. It's "fairly discernible" that Congress intended the CSRA to foreclose judicial review in at least some circumstances. *Id.* at 23.

2.

We next consider whether the CSRA applies to Rydie and Fleming's claims. The Supreme Court laid out the relevant test in *Thunder Basin Coal Co. v. Reich*. 510 U.S. at 212–16. There, the Court considered whether district courts have jurisdiction to hear pre-

---

[6] That the challenge in *Elgin* was to a statute rather than an executive order is of no moment. We have spoken broadly about the CSRA, announcing that it "constitutes the exclusive remedy for claims arising out of federal employment." *Hall v. Clinton*, 235 F.3d 202, 203 (4th Cir. 2000). And courts have held that the CSRA can preclude district courts' jurisdiction over challenges to executive orders. *See, e.g.*, *Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, 929 F.3d 748, 755 (D.C. Cir. 2019); *Nat'l Ass'n of Agric. Emps. v. Trump*, 462 F. Supp. 3d 572, 580 (D. Md. 2020).

9

enforcement, due process challenges to agency orders issued under the Federal Mine Safety and Health Amendments Act of 1977. *Id.* at 202. The Court discussed three factors in holding that the CSRA precluded district court jurisdiction. Now known as the "*Thunder Basin* factors," they are: "(1) whether the statutory scheme forecloses all meaningful judicial review," "(2) the extent to which the plaintiff's claims are wholly collateral to the statute's review provisions, and (3) whether agency expertise could be brought to bear on the questions presented." *Bennett*, 844 F.3d at 181, 183 (cleaned up).

i.

The first factor—availability of meaningful judicial review—is the "most important." *Id.* at 183 n.7. A statutory scheme provides meaningful judicial review, even if it requires litigants to begin in an administrative forum, so long as an appeal to an Article III court is available "in due course." *Id.* at 186. A scheme that "pose[s] a risk of some additional and irreparable harm beyond the burdens associated with the dispute resolution process" is not meaningful. *Tilton v. SEC*, 824 F.3d 276, 286 (2d Cir. 2016). Nor are opportunities for judicial review that require a party to "challenge a [] rule at random" or "bet the farm by taking [a] violative action before testing the validity of [a] law." *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 490 (2010) (cleaned up).

As applied here, the CSRA allows Rydie and Fleming to challenge their working conditions and preemptively contest their termination.

10

First, to the extent that Rydie and Fleming challenge their working conditions, the CSRA provides meaningful review.[7]  5 U.S.C. § 2302 defines a "prohibited personnel practice" as any one of fourteen acts that supervisory employees may not take against those in a "covered position." *Id.* § 2302(a), (b).  Supervisory employees are those who have "authority to take, direct others to take, recommend, or approve any personnel action." *Id.* § 2302(b).  One type of "personnel action" is a "significant change in duties, responsibilities, or working conditions." *Id.* § 2302(a)(2)(A)(xii).  And "covered position[s]" include "any position in the competitive service," *id.* § 2302(a)(2)(B), while the competitive service includes "all civil service positions in the executive branch," subject to limited exceptions not relevant here. *Id.* § 2102(a)(1).  Because Rydie and Fleming work in the executive branch, they are in covered positions.  Put simply, § 2302(b) prohibits supervisors from taking specified actions against their subordinates.

An employee may challenge a prohibited personnel practice by filing an allegation with the Office of Special Counsel. *Id.* § 1214(a)(3).  That office must give each employee "fair and equitable treatment . . . with proper regard for their privacy and constitutional rights." *Id.* § 2301(b)(2).  The CSRA thus empowers the Office of Special Counsel to hear constitutional claims. *Fleming v. Spencer*, 718 F. App'x 185, 188 (4th Cir. 2018) (per curiam); *see also Ferry v. Hayden*, 954 F.2d 658, 661 (11th Cir. 1992).  And as we've

---

[7] We need not—and thus do not—decide whether the challenge here would fit the category of "duties, responsibilities, or working conditions" under § 2302(a)(2)(A)(xii).

11

outlined above, claims flow from the Office of Special Counsel to the Merit Systems Protection Board. From there, judicial review is available in the Federal Circuit.

This process poses only the traditional burdens of litigation. *See Tilton*, 824 F.3d at 286. And it doesn't require employees to violate the law to test its validity. *See Free Enter. Fund*, 561 U.S. at 490. That's because § 2302(b)'s fourteen prohibited practices focus on the conduct of the supervisory employee, not the employee who suffers adverse treatment. Additionally, the right to appeal to the Federal Circuit allows for review by an Article III tribunal. *See Elgin*, 567 U.S. at 10 ("[T]he Federal Circuit is fully capable of providing meaningful review.").

Left to consider is whether Rydie and Fleming's allegations fall within § 2302(b)'s fourteen prohibited practices. Section 2302 prohibits a covered employee from "tak[ing] or fail[ing] to take any [] personnel action if the taking or failure to take such action violates any law, rule, or regulation." 5 U.S.C. § 2302(b)(12). Violations of an employee's constitutional rights fall within this subsection. *See Weaver v. U.S. Info. Agency*, 87 F.3d 1429, 1432 (D.C. Cir. 1996). So even if Executive Order 14,043 required covered employees to engage in a prohibited practice, § 2302(b)(12) provides for meaningful review.

But our analysis isn't done because Rydie and Fleming seek to prevent their termination, an action which § 2302 doesn't cover. To address this issue, we turn to 5 U.S.C. § 7513, which discusses the procedure for employee removal.

"An employee against whom an action [including removal] is proposed is entitled to" notice, time to present evidence, representation, and a written decision.[8] *Id.* § 7513(b). Notice must be in writing, come thirty days before the agency acts, and describe the charges. *Id.* § 7513(b)(1); *Brook v. Corrado*, 999 F.2d 523, 526 (Fed. Cir. 1999). The agency may, but need not, provide a hearing. 5 U.S.C. § 7513(c).

"An employee against whom an action is taken . . . is entitled to appeal to the Merit Systems Protection Board." *Id.* § 7513(d). On appeal, the employee has the right to a hearing and an attorney. *Id.* § 7701(a). The Board is forbidden from sustaining any decision that "was not in accordance with law." *Id.* § 7701(c)(2)(C). And the Director of the Office of Personnel Management may intervene in proceedings when the meaning of civil service regulations under the Director's purview are at issue. *Id.* § 7701(d)(1)(A). Again, the Board's final orders are appealable to the Federal Circuit. *Id.* § 7703(b)(1)(A).

Like that for prohibited personnel practices, the process for challenging termination under § 7513 poses only the risks associated with traditional litigation. The same holds true for the appeal process to the Federal Circuit following administrative review.

Rydie and Fleming don't contest any of this; nor could they. Instead, they say that § 7513 doesn't provide them with meaningful judicial review because it doesn't contemplate pre-enforcement challenges. We disagree.

---

[8] For Chapter 75, "employee[s]" include "individual[s] in the competitive service." 5 U.S.C. § 7511(a)(1)(A). So for the same reasons that Chapter 23 applies to Rydie and Fleming, Chapter 75 does as well.

13

Section 7513(b) provides an adequate vehicle to mount a pre-enforcement challenge to termination. It begins by listing the rights of "[a]n employee against whom an action is *proposed*." *Id.* § 7513(b) (emphasis added). As we've just discussed, § 7513(b) offers employees written notice, the opportunity to respond, and potentially a pre-deprivation hearing. These processes allow for meaningful review.

Rydie and Fleming push back, arguing that pre-enforcement challenges fall outside the CSRA's scheme. They rely on a D.C. Circuit opinion, which found "meritless" the contention that the CSRA divests district courts' jurisdiction over pre-enforcement challenges. *Nat'l Treasury Emps. Union v. Devine*, 733 F.2d 114, 117 n.8 (D.C. Cir. 1984).

Our sister circuit's conclusion assumed that "a detailed scheme of administrative adjudication [can't] impliedly preclude[] preenforcement judicial review of rules." *Id.* But *Devine* predates *Elgin* and *Thunder Basin*, which clarify that a statutory scheme can bar such review when Congress's intent is "fairly discernible." 567 U.S. at 8–10; 510 U.S. at 207. And as we've explained, Congress's use of "proposed" in § 7513 signals its intent to preclude pre-enforcement judicial challenges.[9]

Nor is it "illogical to suggest" that administrative agencies have exclusive jurisdiction over pre-enforcement challenges. *Contra Smith v. Biden*, No. 21-cv-19457, 2021 WL 5195688, at *6 (D.N.J. Nov. 8, 2021). After all, the CSRA ultimately preserves

---

[9] Rydie and Fleming also implicitly contend that the facial nature of their challenges takes them outside the CSRA's scope. *See* Appellants' Br. at 2 ("[T]he Executive Order *on its face* implicates and violates a fundamental right." (emphasis added)). Not so. The Supreme Court has rejected a jurisdictional rule for the CSRA based on the facial/as-applied distinction. *Elgin*, 567 U.S. at 15.

14

employees' access to the courts. They merely need to exhaust administrative review first. In any event, we look beyond a statute's plain meaning only when it "produces an outcome that is demonstrably at odds with clearly expressed congressional intent to the contrary or results in an outcome . . . that is so gross as to shock the general moral or common sense." *Sigmon Coal Co. v. Apfel*, 226 F.3d 291, 304 (4th Cir. 2000) (cleaned up). That's not the case here.

And nothing in the CSRA prohibits agencies acting under § 7513 from considering constitutional challenges. True, "[a]djudication of the constitutionality of congressional enactments has generally been thought beyond the jurisdiction of administrative agencies." *Johnson v. Robinson*, 415 U.S. 361, 368 (1974) (cleaned up). But that rule "is not mandatory." *Thunder Basin*, 510 U.S. at 215. And where an independent body—here, the Merit Systems Protection Board—hears constitutional challenges, it makes little sense to hamstring agencies by limiting the scope of arguments they may consider.

Fairness also dictates the order of operations we suggest. As we've said, the Office of Special Counsel may address constitutional challenges when reviewing prohibited personnel practices. *See Fleming*, 718 F. App'x at 188. The counterpart for challenges to more severe actions under § 7513 is the agency; both bodies hear disputes before an appeal to the Board. It would defy logic to suggest that an employer can avoid review of a constitutional question (even if only temporarily) by taking a more drastic action.

One last wrinkle. The CSRA applies when "an action is *proposed*." 5 U.S.C. § 7513(b) (emphasis added). "[P]roposed" is not defined in Title 5. But we need not define

15

when an action is proposed to decide this case.[10]  It's enough to note (as Rydie and Fleming concede) "that the enforcement has begun." J.A. 43.  For if enforcement has begun, it must have been proposed.

We conclude that the CSRA provides Rydie and Fleming with meaningful judicial review.

ii.

The second *Thunder Basin* factor also counsels against the district court's jurisdiction.  Claims filed in federal court that are "wholly collateral to a statute's review provisions" are less likely to be precluded.  *Thunder Basin*, 510 U.S. at 212 (cleaned up).  "Under this standard, claims are not wholly collateral when they are the vehicle by which petitioners seek to reverse agency action." *Bennett*, 844 F.3d at 186 (cleaned up).  In other words, a claim isn't wholly collateral to the CSRA if the Board "regularly adjudicate[s]" similar challenges.  *See Elgin*, 567 U.S. at 22.

Rydie and Fleming preemptively challenge their termination, arguing Executive Order 14,043 was an ultra vires act, that it fails to provide them with due process, and that it violates their rights to bodily integrity and privacy.  But "[a] challenge to removal is precisely the type of personnel action regularly adjudicated by the Board and the Federal Circuit within the CSRA scheme." *Id.*  And, as we've said, Rydie and Fleming's

---

[10] A proposed action often takes the form of § 7513(b)(1)'s written notice. *See, e.g.*, *Campbell v. McCarthy*, 952 F.3d 193, 199 (4th Cir. 2020).  But we're unaware of any decision cabining such actions to those where the agency has provided notice.

16

constitutional challenge to the Executive Order doesn't remove the dispute from the CSRA's ambit. *See id.* at 5. So their claims aren't wholly collateral to the CSRA.

iii.

The third *Thunder Basin* factor—agency expertise—also suggests that district courts should stay their hand. We have recognized that the Supreme Court has broadened its view of agency expertise. *Bennett*, 844 U.S. at 187. Previously, the Court limited the value of agency expertise to "technical considerations of agency policy." *See Free Enter. Fund*, 561 U.S. at 491 (cleaned up). But the Court later clarified that an agency "can apply its expertise" to "the many threshold questions that may accompany a constitutional claim." *Elgin*, 567 U.S. at 22. "[S]tatutory or constitutional claims that the [agency] routinely considers" may also provide relevant expertise. *Id.* at 23.

As in *Elgin*, the agencies here—the Department of Defense and the Department of Health and Human Services—may have experience relevant to some of Rydie and Fleming's challenges. It's also possible they may moot Rydie and Fleming's due process concerns by granting more procedural safeguards, or they may determine that action against them wouldn't "promote the efficiency of the service." 5 U.S.C. § 7513(a).

*          *          *

Considering all the relevant factors, we conclude that—via the CSRA—Congress divested the district court of jurisdiction to hear Rydie and Fleming's claims. We therefore

17

vacate the district court's judgment and remand the case with instructions that it be dismissed without prejudice for lack of subject-matter jurisdiction.

*VACATED AND REMANDED*
*WITH INSTRUCTIONS*